IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JILL TRAXLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-1450-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MULTNOMAH COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Daniel Snyder
Matthew C. Lackey
1000 S. W. Broadway, Suite 2400
Portland, Oregon  97205

     Attorneys for Plaintiff

Agnes Sowle
Jenny M. Morf
Assistant County Attorneys
501 S. E. Hawthorne Blvd., Suite 500
Portland, Oregon  97214

     Attorneys for Defendant

KING, Judge:

Plaintiff Jill Traxler prevailed at trial on her Family and Medical Leave Act ("FMLA") interference claim, 29 U.S.C. § 2615(a)(1). The jury awarded Traxler $250,000 in economic damages up to the time of trial and $1,551,000 in front pay. Before the court is Defendant's Renewed Motion for Judgment as a Matter of Law and Request for New Trial pursuant to FRCP 50(b) and 59 (#117). For the reasons below, I reduce the amount of front pay after concluding that I made a legal error by allowing the jury to determine the amount.

## LEGAL STANDARDS

I.      Judgment as a Matter of Law

A motion for judgment as a matter of law must be denied, and a jury's verdict must be upheld, if the verdict is supported by substantial evidence. Wallace v. City of San Diego, 479 F.3d 616, 624 (9th Cir. 2007). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion from the same evidence." Id. The court must review the record as a whole but disregard all evidence favorable to the moving party that the jury is not required to believe. All reasonable inferences must be drawn in favor of the nonmoving party. Moreover, the court may not substitute its view of the evidence for the jury's, may not make credibility determinations, and may not weigh the evidence. Id.; Johnson v. Paradise Valley Unified School District, 251 F.3d 1222, 1227 (9th Cir.), cert. denied, 534 U.S. 1035 (2001).

II.      New Trial and Remittitur

Even if a verdict is supported by substantial evidence, the court may grant a motion for a new trial if it concludes that the verdict is contrary to the clear weight of the evidence, is based

on evidence which is false, or to prevent a miscarriage of justice.  Silver Sage Partners v. City of

Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001).  The court may weigh the evidence, may

evaluate the credibility of the witnesses, and is not required to view the evidence from the

perspective most favorable to the prevailing party.  United States v. Kellington, 217 F.3d 1084,

1095 (9th Cir. 2000).

        In reviewing a jury's damages award, the court may grant a motion for new trial if the

award is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on

speculation or guesswork."  Snyder v. Freight, Const., Local No. 287, 175 F.3d 680, 688 (9th

Cir.), cert. denied, 528 U.S. 926 (1999).

        Remittitur is available to correct excessive verdicts.  Pershing Park Villas v. United

Pacific Insurance, 219 F.3d 895, 905 (9th Cir. 2000).  A trial court reviewing a damages award

attacked as excessive must consider the evidence of damages in a light most favorable to the

prevailing party.  Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir. 1987),

opinion amended on other grounds, 817 F.2d 609 (9th Cir. 1987).

        If the court concludes that a damages award is excessive, it may either grant the

defendant's motion for a new trial, or deny the motion, conditioned upon the prevailing party's

acceptance of a remittitur.  Silver Sage, 251 F.3d at 818.  A trial court granting a motion for

remittitur does not substitute its judgment for that of the jury, but instead reduces the judgment to

the maximum amount sustainable by the proof.  D & S Redi-Mix v. Sierra Redi-Mix &

Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982) (citations omitted).

**DISCUSSION**

Based on <u>Arban v. West Publishing Corp.</u>, 345 F.3d 390, 406 (6th Cir. 2003) (FMLA), I
made a decision during trial to allow the jury to decide the amount of front pay.  The Ninth
Circuit has not addressed this issue in the FMLA context.

Both the County and Traxler agree that the "decision whether to order the equitable
remedy of reinstatement or, in the alternative, to award front pay, is a decision for the trial court."
<u>Cassino v. Reichhold Chemicals, Inc.</u>, 817 F.2d 1338, 1347 (9th Cir. 1987), <u>cert. denied</u>, 484
U.S. 1047 (1988).  Traxler relies on <u>Cassino</u>'s next statement that "[i]f the court concludes that
reinstatement is not feasible, the jury then decides the amount of the front pay award."  <u>Id.</u>
(citing without analysis cases from the Third, Sixth, Eighth, and Eleventh Circuits).

The County argues that <u>Cassino</u> is no longer persuasive in light of <u>Lutz v. Glendale</u>
<u>Union High Schoo</u>l, 403 F.3d 1061 (9th Cir. 2005).  The County contends that the court should
determine the amount of front pay because it is an equitable remedy.  The County also points to
the trend in Second, Fourth, Seventh, Eighth, and Tenth Circuits that front pay should be decided
by the court.  The County seeks an award of no front pay, or alternatively, a greatly reduced
reward.

Because the Circuits are split, Traxler asks that the jury award be left undisturbed.

I first affirm my earlier conclusion that reinstatement is not practical due to friction
caused by Traxler's use of intermittent family leave.  Moreover, the County has not suggested
that reinstatement is possible.

The split between the circuits on whether the court or the jury should determine the amount of front pay is described in Newhouse v. McCormick & Co., Inc., 110 F.3d 635 (8th Cir. 1997) (ADEA) as follows:

> Our sister circuits have expressed differing opinions on the question of whether a jury can determine the amount of front pay. The Third, Fifth, Sixth, and Ninth Circuits have held that while the district court must initially determine whether a plaintiff is entitled to front pay in lieu of reinstatement, the jury determines the amount of front pay damages. [citing cases including Casssino] These courts have adopted this view without any analysis, merely reciting the one statement of dicta from Maxfield in which the Third Circuit, without citation to any authority, stated that "the amount of damages available as front pay is a jury question." 766 F.2d at 796.
>
> To the contrary, the Second, Fourth, Seventh, and Tenth Circuits hold that both the determination of whether front pay is appropriate and the determination of how much front pay to award are questions for the district court's equitable discretion, and thus, the issue of the amount of front pay should not be submitted to the jury. [citing cases] We agree with the rule and find that the Second Circuit's Dominic case [Dominic v. Consol. Edison Co. of New York, Inc., 822 F.2d 1249, 1257 (2nd Cir. 1987)] best enunciates the rationale.
>
> In Dominic, the Second Circuit set forth a thorough and well-reasoned discussion, concluding that the amount of front pay must be determined by the court. 822 F.2d at 1257-58. The court concluded that the language, structure, and history of 29 U.S.C. § 626 [ADEA] all indicate Congress's intention "to limit jury trials to factual issues underlying claims for *legal* relief." Id. at 1257 (emphasis added). Additionally, the court reasoned as follows:
>
> > There is much overlap between the facts relevant to whether an award of front pay is appropriate and those relevant to the size of the award. For example, both questions turn in part on the ease with which the employee will be able to find other employment. To divide the fact finding responsibilities in such circumstances would be anomalous and would risk inconsistent decisions. . . . [for example,] a judge might find front pay appropriate, but the jury might award only a nominal sum based on its belief that the employee could secure immediate employment. Id.

Id. at 642-43.

Some circuits issued opinions after <u>Newhouse</u> in which the circuits did not change

positions.  <u>See</u> <u>Arban</u> (3rd Cir. 2003); <u>Nichols v. Ashland Hosp. Corp.</u>, 251 F.3d 496 (4th Cir.

2001) (court declined to award front pay in *post-trial* motions after FMLA trial).

In <u>Lutz</u>, the Ninth Circuit had to determine whether back pay under the Americans with

Disabilities Act ("ADA") is a matter for resolution by the court or by the jury.  <u>Lutz</u>, 403 F.3d at

1067.  The ADA expressly incorporates the remedies available under Title VII, which Congress

expanded by amendment in 1991. <u>Id.</u> at 1067-68.  After reviewing the case law prior to the

Title VII amendment, as well as the amendment itself, the Ninth Circuit concluded that there was

no right to have a jury determine the amount of back pay under Title VII or the ADA because

"back pay remains an equitable remedy to be awarded by the district court in its discretion."  <u>Id.</u>

at 1069.

In considering the types of damages falling within Title VII's statutory cap, the Court

cited with approval cases stating that front pay is the monetary equivalent of the equitable

remedy of reinstatement.  <u>Pollard v. E.I. Du Pont de Nemours & Co.</u>, 532 U.S. 843, 853, 121 S.

Ct. 1946 (2001) (front pay is not an element of compensatory damages so Title VII's statutory

cap is not applicable to front pay).

Traxler combines the <u>Lutz</u> holding–back pay is an equitable remedy to be awarded by the

court–with the <u>Pollard</u> statement–front pay is the monetary equivalent of the equitable remedy of

reinstatement–to argue that under the more recent cases that are binding on this court, front pay is

an equitable remedy so the amount must be determined by the court.

In light of the split between the circuits, the lack of analysis in <u>Cassino</u> and the cases on

which it relies, the <u>Dominic</u> reasoning, and the recent holding in <u>Lutz</u>, I conclude that <u>Lutz</u> has

replaced <u>Cassino</u> as the law of the Ninth Circuit. Thus, I should have determined the amount of front pay rather than ask the jury to make the determination. Because of this legal error, I will set aside the jury award of front pay and determine the amount myself based on the evidence I heard at trial. In essence, I am granting the County's motion for a new trial on that issue.

The County contends that it is overly speculative to assume that Traxler would remain in the workforce for another 16 years, that Traxler did not prove that she could not secure full-time employment in the future if she tried, that her own expert estimated that she would likely participate in the workforce another 12.75 years, that the expert used a salary that was nearly $4,000 a year higher than what Traxler earned, and that the expert neglected to consider the cap on Traxler's salary.

Traxler argues that the County cannot argue that her expert's calculations are deficient when the County did not challenge them with its own expert at trial. Similarly, Traxler argues that it is the County's burden to prove that she could find comparable full-time employment for the remainder of her working life. Concerning a new trial, Traxler argues that the amount of front pay is not grossly excessive because the County did not present expert opinion on a reasonable amount.

To support her claim for front pay, Traxler relied on the testimony of economist Michael Sheehan, PhD. Although there is no dispute about Sheehan's mathematical calculations, his assumptions are questionable and appear to be based on a theoretical worst case without any evidentiary support.

The jury apparently accepted Dr. Sheehan's calculated wage and fringe benefit losses which assumed that Traxler would work to age 65, an additional 16.64 years. There is no

Page 7 - OPINION AND ORDER

testimony from Traxler about her future work plans, whether or not she was still working at the

Sheriff's office.  Moreover, Traxler had a statistical work life expectancy of only 12.75 years.

There is some indication in the record that Sheehan used incorrect wage information.  The

evidence was that Traxler had reached the top of her grade and would not have been entitled to

future merit increases.  Further, there was testimony about the yearly budget reductions in the

Sheriff's office so an increase in higher level positions was unlikely.  Sheehan, however,

assumed consistent merit increases in addition to yearly cost of living increases.

Sheehan also assumed that Traxler would only be able to earn an hourly rate of $15 per

hour, adjusted for inflation but without any increase for advancement.  At the Sheriff's Office,

Sheehan assumed that Traxler was paid $34.18 per hour, which was reduced to $28.50 per hour

when she transferred to Central Human Resources.  Traxler testified that she is 48 years old, has

a two-year college degree, a successful work history, and very complimentary performance

evaluations until she was terminated.  From her termination to the time of trial, Traxler primarily

worked through temporary agencies.  Also during this time, Traxler had issues concerning her

mother, her partner, and her own surgery, all of which undoubtedly affected her employment

opportunities and her ability to search for permanent work.  Traxler gave no testimony about her

efforts to find a full-time job more equivalent to her work with the County.  There was no

testimony from anyone regarding her employment potential.

In closing argument, Traxler's attorney only asked for front pay in the range of $670,746

to $1,163,514.  The jury overshot the high end of his request by $387,486.

I am mindful of the Verdict found by the jury.  I also note, however, that the jury

exceeded slightly the maximum back pay loss testified to by Sheehan and far exceeded the front

pay range argued by Traxler's attorney.  There is little doubt that the testimony of Multnomah County's treatment of Traxler, in having a uniformed officer escort her from the building, had some effect on the jury's decision.  Moreover, with the FMLA claim, there is no opportunity for the jury to award emotional distress damages.  I believe that the jury inflated the front pay award to account for the inability to do so.

After considering Traxler's testimony, I conclude that she gave no specifics sufficient to satisfy the court that she will not be able to find a full-time job with pay and benefits similar to her Multnomah County employment.  It is reasonable to assume that there may be some disparity in earning capacity for a period of time.  I find it unreasonable, however, to assume that the disparity will continue for the rest of Traxler's working life, particularly at the levels advanced by Sheehan.  Traxler is young and has good job skills.  Now that this litigation is behind her, Traxler is in a position to focus on her future employment.

Taking all of this into consideration, I find that a reasonable award for front pay is $267,000.

In the event that this decision is appealed and the Ninth Circuit holds that the jury should determine the amount of front pay, I make the alternative holding that the jury's award of $1,551,000 in front pay is grossly excessive for the same reasons.  I deny the County's motion for a new trial, conditioned on Traxler's acceptance of a remittitur to $267,000 in front pay.


///


///

Page 9 - OPINION AND ORDER

## CONCLUSION

Defendant's Renewed Motion for Judgment as a Matter of Law and Request for New Trial pursuant to FRCP 50(b) and 59 (#117) is granted in part as explained above. The amount of front pay is reduced to $267,000.

IT IS SO ORDERED.

Dated this _____1st_____ day of July, 2008.


      _/s/ Garr M. King_____
      Garr M. King
      United States District Judge