**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JILL TRAXLER,
     *Plaintiff-Appellant,*

v.

MULTNOMAH COUNTY,
     *Defendant-Appellee.*

No. 08-35641

D.C. No.
3:06-cv-01450-KI

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
September 2, 2009—Seattle, Washington

Filed February 26, 2010

Before: Michael Daly Hawkins, M. Margaret McKeown and
Jay S. Bybee, Circuit Judges.

Opinion by Judge McKeown

TRAXLER v. MULTNOMAH COUNTY          3155

**COUNSEL**

Daniel J. Snyder, Law Offices of Daniel Snyder, Portland
Oregon, for the plaintiff-appellant.

3156            Traxler v. Multnomah County

Angela Sowle, County Attorney, and Jenny Morf, Assistant
County Attorney, for the defendant-appellee.

---

## OPINION

McKEOWN, Circuit Judge:

   This case presents two issues concerning damages under
the Family Medical Leave Act of 1993 ("FMLA"). 29 U.S.C.
§§ 2601-2654 (2006). In an issue of first impression, we con-
sider whether the court, rather than the jury, determines the
amount of the front pay award[1] and whether the district
court's calculation of that award was clearly erroneous. Sec-
ond, we address whether the district court erred in denying
liquidated damages without making specific findings as to the
employer's good faith conduct and reasonable belief that it
was not violating the statute. We conclude that under the
FMLA, front pay is an equitable remedy to be determined by
the court. We affirm the district court's determination and cal-
culation of the front pay award. We reverse and remand the
district court's decision not to award liquidated damages.
Absent an articulated rationale to support this conclusion, we
cannot meaningfully review the challenge to liquidated dam-
ages.

### BACKGROUND

   Jill Traxler began working in the Multnomah County Sher-
iff's Office ("the County") in 1987 and was promoted to the
Human Resources unit in 1988. By 1998 she had become the

---

[1]Front pay is "money awarded for lost compensation during the period
between judgment and reinstatement or in lieu of reinstatement." *Pollard
v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). "In cases
in which reinstatement is not viable because of continuing hostility
between the plaintiff and the employer or its workers . . . courts have
ordered front pay as a substitute for reinstatement." *Id.*

interim Personnel Unit Manager and later was promoted to
Human Resources Manager I.

The FMLA entitles certain employees to "12 workweeks of
leave during any 12-month period" if the employee has a seri-
ous health condition, gives birth or adopts a son or daughter,
or needs to care for a "spouse, or a son, daughter, or parent
[who] has a serious health condition." 29 U.S.C. § 2612(a)(1).
Beginning in 2002, Traxler took medical leave under the
FMLA, and again in 2005, she took leave due to a serious
physical health condition. During her employment, Traxler
never took more than the leave permitted under the FMLA.

On June 13, 2005, the County notified Traxler that her
position would be eliminated effective July 1, 2005, and it had
a uniformed officer escort Traxler out of the office. She was
placed on paid administrative leave, and then transferred to a
lower paying position. Traxler continued to take leave under
the FMLA, and in September 2005, she received an unfavor-
able performance review in her new position. Traxler filed a
written response to the performance review, but to no avail.
The County terminated Traxler in late September 2005.

Traxler filed suit under the FMLA and the Oregon counter-
part. After a four-day trial, the jury found that the County had
taken adverse employment actions against Traxler in response
to her legitimate use of protected leave under the FMLA. The
jury awarded Traxler $250,000 in damages (back pay) up to
the time of trial and $1,551,000 in front pay. The court
declined to enter a judgment for liquidated damages.

The County filed a post-trial motion requesting judgment as
a matter of law or a new trial pursuant to Federal Rules of
Civil Procedure 50(b) and 59, arguing that the district court
erred in submitting the calculation of front pay to the jury and
requesting that the district court limit the amount of front pay
awarded to Traxler. The district court agreed it had erred in
allowing the jury to consider the amount of front pay because

front pay is an equitable remedy that must be determined by
the court. The district court thus vacated the jury's award of
front pay, made findings of fact as to the basis for front pay,
and awarded Traxler $267,000 in front pay. The district court
also ruled in the alternative that if it was proper for the jury
to calculate front pay, the jury's award of $1,551,000 was
grossly excessive; the court denied the County's motion for a
new trial, conditioned on Traxler's acceptance of a remittitur
of $267,000. Traxler timely appealed the district court's find-
ing that front pay is an equitable remedy to be decided by the
court, the calculation of the front pay award, and the denial
of liquidated damages.

## ANALYSIS

## I.   FRONT PAY

### A.    FRONT PAY IS AN EQUITABLE REMEDY APPROPRIATELY DETERMINED BY COURTS

The central question in this appeal is the characterization of
front pay under the FMLA—that is, whether it is a legal or an
equitable remedy. And, more precisely, even if it is an equita-
ble remedy, should the amount be determined by the court or
a jury.[2]

On this issue of first impression in this circuit, we hold that
under the FMLA, front pay is an equitable remedy that must
be determined by the court, both as to the availability of the
remedy and the amount of any award. Our view accords with
the  Fourth,  Fifth  and  the  Tenth  Circuits,  which  have

---

[2]Traxler argues that the County waived the argument that front pay is
an equitable remedy by "fail[ing] to object to the determination of the
amount of front pay by the jury at the time of trial." The County did not
waive this issue. The County raised the issue multiple times throughout
the proceedings, including in its motion for judgment as a matter of law
and request for new trial. This question was also the subject of explicit rul-
ings by the district court.

TRAXLER V. MULTNOMAH COUNTY                    3159

addressed this issue under the FMLA. *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (noting that "Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts." (internal quotation marks omitted)); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 964-66 (10th Cir. 2002) (holding that the court decides propriety and amount of front pay award, but in making the award, the court must accept the jury's factual findings); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 & n.3 (4th Cir. 1998) (holding that "the district court erred in submitting the issue of front pay to the jury . . . . On remand, the district court should determine . . . whether front pay should be awarded and, if so, in what amount."). The approach in these cases follows the general recognition that front pay is best understood as a substitute for the equitable remedy of reinstatement, and thus, is appropriately determined by the court. *Cline*, 144 F.3d at 307 ("[F]ront pay, as an alternative or complement to reinstatement, is an equitable remedy best determined by the district court rather than the jury."). Only the Sixth Circuit differs, holding that the district court determines the propriety of awarding front pay, but that the jury decides the actual amount of the award. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 405-06 (6th Cir. 2003).

   **[1]** Our analysis begins with the statute itself. The FMLA does not explicitly grant plaintiffs the right to front pay; any front pay awards must fall within the section on equitable relief. *See* 29 U.S.C. § 2617. The FMLA provision governing an employee's remedy against an employer is divided into two subsections. The first subsection allows "damages" for past costs including, among other things, "wages, salary, employment benefits, or other compensation denied or lost." *Id.* (a)(1)(A)(i)(I). That same subsection also covers non-wage actual monetary losses, interest, and liquidated damages. The second subsection addresses prospective relief, allowing "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id.* (a)(1)(B).

Front pay is not included in the enumerated damages under
the first subsection. § 2617(a)(1)(A). Thus, the court's power
under the FMLA to award front pay, as an alternative to rein-
statement, is derived solely from the statutory provision per-
mitting the court to award "such equitable relief as may be
appropriate." § 2617(a)(1)(B).

**[2]** The characterization of front pay as an equitable rem-
edy is consistent with the general nature of front pay in the
context of other employment-related statutes. Although pure
money damages are " 'the traditional form of relief offered in
the courts of law,' " *Smith v. Barton*, 914 F.2d 1330, 1337
(9th Cir. 1990) (quoting *Curtis v. Loether*, 415 U.S. 189, 196
(1974)), an award of monetary damages may constitute equi-
table relief if it is " 'incidental to or intertwined with injunc-
tive relief.' " *Chauffeurs Local No. 391 v. Terry*, 494 U.S.
558, 571 (1990) *(quoting Tull v. United States*, 481 U.S. 412,
424 (1987)). The leading employment case on this point is
*Pollard v. E. I. du Pont de Nemours & Co.*, a Title VII case
in which the Supreme Court distinguished front pay from
compensatory damages. 532 U.S. 843 (2001). The Court held
that "[i]n cases in which reinstatement is not viable . . . courts
have ordered front pay as a substitute for reinstatement." *Id.*
at 846. In other words, " '[a] front pay . . . award is the mone-
tary equivalent of the equitable remedy of reinstatement.' "
*Id.* at 853 n.3 (quoting *Blum v. Witco Chem. Corp.*, 829 F.2d
367, 383 (3d Cir. 1987)). As a practical matter, front pay is
awarded at the court's discretion only if the court determines
that reinstatement is inappropriate, such as where no position
is available or the employer-employee relationship has been
so damaged by animosity that reinstatement is impracticable.
*Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d
Cir. 1984).

**[3]** Recognizing that front pay is an equitable remedy, it
makes little sense to say that the availability of front pay is a
judicial determination and the amount a jury determination.
The statute does not support such a result. Splitting the rem-

edy into an equitable and a legal component is a false dichotomy. This is a classic case where a monetary award is inextricably linked with the equitable determination regarding reinstatement. As a proxy for reinstatement, front pay is an equitable award within the purview of the court, not the jury.

To begin, the determination whether reinstatement is feasible, either immediately or in the future, is a balance of equitable concerns. Although there is a strong preference in favor of reinstatement, sometimes it simply isn't practical. *Downey*, 510 F.3d at 544 (noting that under the FMLA, "reinstatement is the preferred equitable remedy" but when not feasible, an award of front pay may be considered). Deciding what amount would compensate for the inability to get a job back is not a form of linear fact-finding appropriately left to the jury. Just as reinstatement invokes equitable factors, so does front pay as a proxy. Judicial discretion is at the heart of the decision. In a case under the Age Discrimination in Employment Act ("ADEA"), the Fourth Circuit observed the following:

> Because of the potential for windfall . . .[the use of front pay] must be tempered. It can be awarded to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment. If a plaintiff is close to retirement, front pay may be the only practical approach. The infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages.

*Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991).

Traxler stakes her position that the amount of front pay is a legal remedy on a single line in our opinion in *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987). *In Cassino*, an ADEA case, we considered whether a

3162          TRAXLER V. MULTNOMAH COUNTY

trial court is required to instruct the jury "that a finding of
hostility [between the employer and the employee is] a pre-
requisite to a front pay award." *Id.* at 1347. We concluded that
the jury does not need to be instructed on hostility because it
is the district court's duty to determine whether there is hostil-
ity between the parties. *Id.* The court then went on to remark
that "[i]f the court concludes that reinstatement is not feasible,
the jury then decides the amount of the front pay award." *Id.*
This observation—plainly dicta—is not inconsistent with our
holding that front pay is an equitable remedy. A trial court,
sitting in equity, may nevertheless employ an advisory jury.
The ultimate decision, however, rests with the court. *See Lutz
v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir.
2005) ("there is no right to have a jury determine the appro-
priate amount of back pay . . . . Instead, back pay remains an
equitable remedy to be awarded by the district court in its dis-
cretion."); *see also Donlin v. Philips Lighting N. Am. Corp.*,
581 F.3d 73, 78 n.1 (3d Cir. 2009) ("[t]he jury's role was only
advisory on the issue of damages because back pay and front
pay are equitable remedies to be determined by the court.").

Picking up on a discussion in *Newhouse v. McCormick &
Co.*, 110 F.3d 635, 642-43 (8th Cir. 1997), the district court
here noted that there is a split in the circuits in ADEA cases
on whether the judge or the jury should determine the amount
of front pay award. Nearly all of the circuits that have consid-
ered front pay under the ADEA treat the remedy as wholly
equitable, leaving both the availability and amount of front
pay to the court. *See e.g.*, *id.* at 643; *Denison v. Swaco Geolo-
graph Co.*, 941 F.2d 1416, 1426-27 (10th Cir. 1991); *Duke*,
928 F.2d at 1424; *Fortino v. Quasar Co.*, 950 F.2d 389, 398
(7th Cir. 1991); *Deloach v. Delchamps, Inc.*, 897 F.2d 815,
823 & n.4, 824 (5th Cir. 1990); *Ramsey v. Chrysler First,
Inc.*, 861 F.2d 1541, 1545 (11th Cir. 1988); and *Dominic v.
Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1257-58 (2d
Cir. 1987). The Third Circuit can now be added to the list.
*Donlin*, 581 F.3d at 78 n.1. Not surprisingly, only one circuit
is squarely in opposition—the Sixth Circuit. *Roush v. KFC*

TRAXLER V. MULTNOMAH COUNTY                3163

*Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir. 1993) (holding that the initial "determination of the propriety of an award of front pay is a matter for the court," but the "amount of an award of front pay is a jury question"). The situation in the First Circuit is unclear.[3]

*Cassino* must also be distinguished based on the difference in the language of the statutes providing the front pay remedy. The ADEA, unlike the FMLA, is ambiguous as to whether front pay is sanctioned as an equitable or a legal remedy. The ADEA allows a court to grant "such legal *or* equitable relief as will effectuate the purposes of this chapter." *See* 29 U.S.C. § 626(c)(1) (emphasis added). The statute goes on to provide that "a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action." *Id.* § 626(c)(2). In contrast, the remedies section in the FMLA enumerates in detail the types of legal damages permitted, and because front pay is not one of the types of legal damages enumerated, any award of front pay must be grounded in the court's power to grant "such equitable relief as may be appropriate." 29 U.S.C. § 2617(a)(1)(B). In addition to this significant statutory difference, notably, the FMLA does not include any reference to "trial by jury of any issue of fact." 29 U.S.C. § 626(c)(2) (ADEA).

In sum, under the FMLA the equitable award of front pay, including the amount, rests solely with the court, not the jury. The passing reference to the contrary in Cassino, which

---

[3]*Compare Chambers v. City of Calais*, 187 F.3d 621, *3 (1st Cir. 1998) (per curiam) (the ADEA allows for an award of front pay, which is equitable relief to be calculated by the judge) *with Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 354 (1st Cir. 1998) (noting that front pay is an equitable remedy awarded by the court, but because under Massachusetts state law, the jury awards front pay, the court submitted the determination of amount of the front pay award to the jury).

3164        Traxler v. Multnomah County

involved the ADEA rather than the FMLA, does not change our conclusion.

## B.   The District Court Did Not Err in Its Calculation of Front Pay

The district court's determination of the amount of front pay is supported by both the court's reasoning and substantial evidence in the record. Although reasonable minds might disagree regarding the amount, the district court did not abuse its discretion when it determined that the front pay award should be $267,000.[4]

The district court rejected as unreasonable Traxler's premise that she would be unable to find a job with similar pay and benefits for the rest of her life, noting that she "is young and has good job skills," but acknowledging that there may be some disparity in her earning capacity for a period of time. Her evidence lacked "specifics sufficient to satisfy the court."

Traxler's expert witness did not fare well in the district court's analysis: "Although there is no dispute about [the witness's] calculations, his assumptions are questionable and appear to be based on a theoretical worst case without any evidentiary support." Specifically, the district court did not accept the expert's conclusion that Traxler would work for an additional 16.64 years instead of 12.75 years—the national average for a woman her age. Although the expert assumed that Traxler would receive merit based pay increases every year, there was evidence that Traxler had reached the top of her pay grade, and yearly budget reductions made further

---

[4]We review for an abuse of discretion the district court's determination of whether to award equitable relief. *Park v. Anaheim Union High Sch. Dist.*, 444 F.3d 1149, 1156 (9th Cir. 2006). The district court's award of damages also is reviewed for an abuse of discretion, *McLean v. Runyon*, 222 F.3d 1150, 1155 (9th Cir. 2000), but we review for clear error the factual findings related to the front pay award. *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148, 1155 (9th Cir. 1999).

TRAXLER v. MULTNOMAH COUNTY                           3165

increases unlikely. Consequently, the district court found that it was unreasonable to assume that Traxler would be unable to find a comparable position "for the rest of Traxler's working life."

The district court was mistaken when it stated that "Traxler gave no testimony about her efforts to find a full-time job more equivalent to her work at the County."[5] Traxler offered testimony regarding her job search activities, although it was general in nature. Nevertheless, there remains ample additional support for the district court's calculation of the front pay award.

[4] The district court also noted that Traxler's attorney asked the jury for a sum between $670,746 and $1,163,514, even less than the jury awarded. The court was mindful of the jury's verdict but emphasized that there was "little doubt" that the County's treatment of Traxler influenced the jury's decision. In a thoughtful opinion and order, the district court considered all of the evidence and awarded front pay of $267,000, which represents almost three years of salary and benefits or nearly four years of salary. The district court's findings were not clearly erroneous and the court did not abuse its discretion with respect to the front pay award.

## II.  LIQUIDATED DAMAGES

[5] The FMLA contains a "liquidated damages" provision, subjecting an employer who violates the Act to double damages unless the employer can prove that its employment action was taken in "good faith" and that it had "reasonable grounds for believing that [its action] was not a violation." 29 U.S.C. § 2617(a)(1)(A)(iii).

---

[5]The district court may have been alluding to the fact that Traxler's testimony pertained to her attempt to find "any kind of work"—not necessarily a "full-time job more equivalent to her work at the County."

Traxler requested liquidated damages for the County's violation of the FMLA. The district court denied the request. Traxler appeals the district court's decision, arguing that the district court abused its discretion by declining to award liquidated damages without specific findings that the County's violation of the FMLA was in good faith and that the County reasonably believed that its conduct was not in violation of the FMLA.

**[6]** Here, the district court never made an explicit finding of good faith or reasonable belief, nor did the district court explain its reasoning. The transcript reflects the following limited exchange regarding liquidated damages:

> MR. SNYDER: Your Honor, excuse me. I think the only other issue, then, would be . . . whether or not the Court is going to make an award of liquidated damages.
>
> THE COURT: An award of what?
>
> MR. SNYDER: Liquidated damages, Your Honor.
>
> THE COURT: No, I'm not.

Unfortunately, neither party inquired as to the rationale or basis for this decision. The County argues that because Traxler did not request specific findings related to liquidated damages, she did not preserve the issue for appeal. Without doubt, Traxler could have saved the parties, the district court, and us considerable resources had she asked the district court to set out the factual and legal basis for denial of liquidated damages. Nonetheless, even if Traxler is deemed to have waived a challenge as to the specificity of findings, she did not waive her general challenge of the district court's failure to award liquidated damages.

**[7]** As an appellate court, we review the decision to deny liquidated damages under the abuse of discretion standard.

TRAXLER v. MULTNOMAH COUNTY                3167

*Arban*, 345 F.3d at 408. To do so, however, we must be able
to ascertain how the district court exercised its discretion. In
*Blue Cross & Blue Shield of Alabama v. Unity Outpatient
Surgery Center, Inc.*, we explained the importance of having
a reasoned decision as the basis for appellate review:

> [W]e must examine the adequacy of the rationale
> behind the district court's decision rather than sim-
> ply reach the conclusion that seems best to us. . . .
> We cannot review the district court's exercise of its
> discretion in weighing [the employer's proof of good
> faith and reasonable belief that it was not violating
> the statute] unless we know that it has done so and
> why it reached its result.
>
>     . . . [By failing to give] *any* indication of the basis
> for its decision . . . the district court left us with no
> reasoned decision to review, and no basis upon
> which to evaluate its exercise of discretion, thereby
> making it impossible for us to do our judicial duty.
> Where, as here, a district court does not explain its
> reasoning, we must remand to that court to recon-
> sider its decision and to set forth its reasons for
> whatever decision it reaches, so that we can properly
> exercise our powers of review.

490 F.3d 718, 724-25 (9th Cir. 2007) (citations omitted). Put
another way, "meaningful appellate review for abuse of dis-
cretion is foreclosed when the district court fails to articulate
its reasoning." *United Nat'l Ins. Co. v. R & D Latex Corp.*,
141 F.3d 916, 919 (9th Cir. 1998).

  It is particularly important for the district court to provide
a rationale for its decision when effectuating a congressional
mandate that the decision reflect certain enumerated factors.
In a case construing the Speedy Trial Act, the Supreme Court
stated:

Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, *clearly articulate their effect in order to permit meaningful appellate review.* Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy, thereby failing to act within the limits prescribed by Congress.

*United States v. Taylor*, 487 U.S. 326, 336-37 (1988) (emphasis added).

**[8]** The FMLA is unambiguous that once it is determined that an employer violated the statute, liquidated damages will be awarded unless the employer proves both "good faith" and "reasonable grounds for believing that [its action] was not a violation" of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). We are unable to "ascertain whether [the] district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy," i.e., the factors of "good faith" and "reasonable belief." The record does not permit us to infer a rationale. We therefore remand to the district court for an explanation, and findings if appropriate, supporting the denial of the award.

Finally, we reject Traxler's additional arguments on the issue of liquidated damages. Traxler posits that the district court's finding that front pay is appropriate is incompatible with the district court's refusal to award liquidated damages. Front pay, however, is the appropriate substitute when, as here, "reinstatement is not practical due to friction caused by Traxler's use of intermittent family leave." It is possible for the employment situation to create hostility even if the employer violated the FMLA in good faith. These two principles are not incompatible. Traxler also argues that a finding

TRAXLER v. MULTNOMAH COUNTY                   3169

of good faith is irreconcilable with the jury's finding that the County violated the FMLA. This argument simply ignores the statute, which puts the burden on the employer to avoid liquidated damages but does not assume that liability under the FMLA and denial of liquidated damages are mutually exclusive. Indeed, an employer may violate the FMLA through acts that are taken in good faith. *See* 29 U.S.C. § 2617(a)(1)(A).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED** for supplemental findings and an explanation on liquidated damages. Each party shall bear its own costs on appeal.